# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                   WORCESTER SUPERIOR COURT
                                                CIVIL ACTION NO.

| | |
|---|---|
| MICHAEL E. LACHANCE | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| TOWN of CHARLTON, a Municipal corporation | ) |
| And officers TIMOTHY A. SMITH, SGT. KEITH R. | ) |
| CLOUTIER, JASON F. WHITE | ) |
| | ) |
| Defendants | ) |

RECEIVED

DEC 1 6 2016

CLERK OF COURTS
WORCESTER COUNTY

## COMPLAINT AND REQUEST FOR JURY TRIAL

### INTRODUCTION

In this action under federal civil rights and disability law as well as state tort law tort, plaintiff Michael E. Lachance ("Mr. Lachance") seeks recovery against three Town of Charlton police officers, Timothy A. Smith ("Officer "Smith"), Sgt. Keith R. Cloutier ("Sgt. Cloutier") and Jason F. White ("Officer White") for the use of unreasonable force in response to a medical emergency, i.e., plaintiff's epileptic seizure. The officers responded to Mr. Lachance's home in the early morning hours of January 4, 2014 based on a report that he was not breathing, was foaming from his mouth and was attempting to get up. The officers attributed his actions in the throes of seizure to criminal activity. Instead of acting to safeguard Mr. Lachance they seized and handcuffed him and used such excessive force in restraining him as to cause spinal fractures at the T4-T5 vertebrae, and other traumatic injuries. Besides claims for excessive force and for supervisory and municipal liability under 42 U.S.C. § 1983, plaintiff brings claims against the officers for assault and battery, and against the town for negligence under M.G.L. c. 258 and for violation of 42 U.S.C. § 12131, the American with Disabilities Act.

1

## JURISDICTION AND VENUE

1. The action is brought under state statutory and state common law, under 42 U.S.C. § 1983 for violation of civil rights under the Fourth and Fourteenth Amendments to the United States Constitution, and for violation of Title II of the American with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. This Honorable Court has jurisdiction to of all claims. M.G.L. c. 212, §§ 3 & 4. *See also*, regarding federal claims, *Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980), *Claflin v. Houseman*, 93 U.S. 130 (1876).

## PARTIES

2. Plaintiff Michael E. Lachance is and was at all pertinent times, a resident of the Town of Dudley, Worcester County, Massachusetts.

3. Defendant Officer Timothy A. Smith was at all pertinent times a duly appointed and sworn police officer of the Town of Charlton; he resides in Worcester County, Massachusetts. He is sued in his individual capacity.

4. Defendant Sgt. Keith R. Cloutier was at all pertinent times a duly appointed and sworn Charlton police officer, and he resides in Worcester County, Massachusetts. His actions in this complaint were taken under the color of law. He is sued in his individual capacity.

5. Defendant Jason F. White was at all pertinent times a duly appointed and sworn Charlton police officer, and he resides in Worcester County, Massachusetts. He is sued in his individual capacity.

6. Defendant Town of Charlton ("The Town") is a municipal corporation of the Commonwealth of Massachusetts.

## FACTS

7. At all pertinent times the actions of each defendant were done under color of law, and each individual defendant was acting in the course of his employment as a Charlton police officer under the direction and control of the Town.

8. On January 4, 2014 at approximately at approximately 0458 hours, Mr. Lachance's wife, Kimberly Lachance ("Ms. Lachance") was awoke to find Mr. Lachance was shaking in bed and making gurgling sounds.

9. Ms. Lachance tried to help her husband to get to the bathroom, but he fell to a set of pillows on the floor by the bed and continued shaking and appeared to her to be having difficulty breathing.

10. Ms. Lachance called 911 and asked the dispatcher to send an ambulance as soon as possible.

11. Before this time Mr. Lachance had not experienced or been diagnosed with a seizure condition.

12. Seizures are transient fits of variable duration and intensity characterized by changes in behavior, sensation, or awareness caused by disturbances in brain activity.

13. There are many different types of seizures and many different causes, one of which is epilepsy.

14. Epilepsy is a chronic neurological disorder that affects various parts of the body and impairs a victim's consciousness and interactions with his surroundings.

15. There are two general categories of seizures: partial seizures, partial seizures related to activity in a limited portion of the brain, and generalized seizures which result from activity diffused throughout the brain.

16. During the active portion of a seizure, there may be sudden involuntary movements of the body, loss of consciousness, dilated pupils, or changes in breathing or skin color.

17. Following the active phase of a seizure the victim may enter what is known as the postictal phase, in which is semi-conscious or confused, and performing repetitive actions while having no awareness or understanding that his has just had a seizure.

18. A person in a postictal period may be physically unsteady, staring blankly, mumbling, confused, unresponsive to other persons trying to communicate with him, or not fully aware of his surroundings.

19. Seizures cloud a patients' awareness, block normal communication and produce a variety of undirected, involuntary and unorganized movements that may be erroneously viewed as aggression.

20. Approximately one (1) in twenty-six (26) people in the United States will develop epilepsy at some point in their lives.[1]

21. TMore than Three million people in the United States currently suffer from epilepsy.

22. When Ms. Lachance called 911 for help she told the dispatcher her husband was barely breathing, bleeding from the mouth and trying to get up from the floor.

23. The dispatcher radioed this information to the officers shortly before they arrived at the home.

24. When the officers arrived Mr. Lachance had managed to get to his feet, but because he was still disoriented he began to walk away when the officers approached him.

25. An ambulance with paramedics also came to the scene.

---

[1] See the Epilepsy Foundation of America, available at: http://www.epilepsy.com/make-difference/public-awareness/1-26. July 13, 2015.

4

26. Mr. Lachance was unarmed and had no idea who the offices were or what was happening to him. As he moved toward his living room area the defendant officers surrounded him and attempted to restrain him and to push him back.

27. Paramedics called out to the officers: "He's seizing. He's seizing."

28. Despite having been informed that Mr. Lachance was suffering from a medical disability, Two officers him into a recliner seat l in the living room.

29. Defendants used the level of force that they employed because they misperceived the effects of his disability as criminal activity.

30. The officers pushed Mr. Lachance onto the recliner with such force that the recliner flipped backwards onto hard tile floor of the kitchen nearby, and one officer fell on top Mr. Lachance.

31. After Mr. Lachance landed on the tile floor defendants' used force to flip Mr. Lachance onto his stomach and attempted to handcuff him..

32. Mr. Lachance, still unaware of what was happenimng, screamed for help and asked what he had done wrong.

33. While Mr. Lachance was laying on his belly one of the officers a pulled his arms back to apply handcuffs while the another officer tried to straddle his legs.

34. Another defendant kneeled on the center of Mr. Lachance's back.

35. Once the defendants' managed to handcuff Mr. Lachance they placed him in a supine position and he was then seated in an EMS stretcher while the defendants duct taped his handcuffed hands and his feet.

36. Mr. Lachance was then transported to UMass Memorial Medical Center.

37. EMT notes from the Town of Charlton Fire Dept. indicate that Mr. Lachance "[w]as never oriented to date or events."

38. They also noted that he not experienced an episode like this in his life.

39. Plaintiff had multiple signs and trauma throughout his body including but not limited to long bruises and ecchymosis from his left hip to his anterior left rib cage. Bruising in the middle of his back and spinal area.

40. He also had cuts and scrapes throughout the left side of his back and left side of his back.

41. Mr. Lachance had bruising throughout his left and right arm, left and right forearm and elbows, as well as injuries to his right knee and to the muscles of his lower right leg.

42. Lachance also had bruising and black and blues to his left shoulder and wrists.

43. Medical records show Mr. Lachance also had conjunctival hemorrhage noted on the lateral side of his right eyeball.

44. Mr. Lachance was hospitalized for a total of four days at UMass and has incurred medical expenses in excess of $54,000.

45. Mr. Lachance was diagnosed with an acute compression fracture of two thoracic vertebrae T4 and T5 which occurred as a direct result of his encounter with police.

46. The force that defendants used was such as a reasonable person would expect to cause Mr. Lachane suffer pain, and a high probability of a serious injury.

47. No reasonable officer would have manhandled Mr. Lachance in the manner he was, and doing so served no legitimate purpose.

48. At all times material to this complaint it was reasonably foreseeable for the Town and to the CPD its officers would encounter citizens suffering from epileptic seizures and other disabilities.

49. The Town should also have been aware that CPD officers required training so that officers that came in contact with epileptic citizens and other disabled individuals would not violate their rights but instead appropriately assist them.

50. At all times material to this complaint the Town and the CPD were recipients of federal funds.

51. Epilepsy is a physical impairment and an actual disability under the American with Disabilities Act.

52. The legislative history of the ADA makes clear that Congress intended persons with epilepsy would fall under the definition of the act. See, e.g. S. Rep. No. 101-116, at 22, 31, 39, 62 (1989); H.R. Rep. No. 101-485 (II) at 51-52, 62, 72, 79-80, 104 (1990).

53. Committee reports on the ADA show Congress's intent to cover all activities of public agencies, including police activities such as arrests. See, e.g. House Comm. Judiciary, H.R. Rep. No. 101-485, pt. 3, at 50 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 473 ("In order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid for seizures."); House. Comm. Educ. & Labor, H.R. Rep. No. 101-485, pt. 2, at 39, 85 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 321, 367. See, e.g. 136 Cong Rec. 11, 461 11,461 (1990) (statement of Rep. Mel Levine) ("Persons with epilepsy who are having seizures are often inappropriately dealt with by the police."); *accord* 136 Cong. Rec. 11,471 (1990) (statement of Rep. Steny Hoyer) ("[P]ersons who have epilepsy are sometimes inappropriately arrested because police officers have not received proper

7

training to recognize seizures and to respond to them. In many situations, appropriate training of officials will avert discriminatory actions.").

54. Prior to Mr. Lachance's arrest the American Epilepsy Foundation ("AEF"), had issued a primer for first responders and law enforcement officers to inform them so the would be able to recognize and respond appropriately to signs and symptoms of epilepsy.

55. AEF also provided first responders and law enforcement agencies with guidance on how to recognize and manage person with seizures to ensure the safety of all parties involved.

56. The AEF offered training to medical teams and law enforcement that could reduce the risk of injury and fatal outcome by employing appropriate training including an online course and written materials.

57. Although defendants were certified as first responders they had not been provided with any type of training on epilepsy or on how to handle persons having seizures.

58. The force that was used against Mr. Lachance occurred as a result of the officers misinterpreting his medical condition and reaction as aggression, as a direct and proximate result of their lack of training.

59. At all times the risk of unnecessary injury to seizure victims at the hands of officers not trained to deal with them was clearly forseeable and the availability of practical measures to safeguard against such injury was readily apparent.

60. The policies and procedures of the Town related to training and supervision of its police officers was the moving force behind the Defendants' violations of Mr. Lachance's civil rights.

## COUNT I
### 42 U.S.C. § 1983: Unreasonable Force
### Smith, Cloutier and White

61. Each of the foregoing paragraphs is incorporated by reference.

62. Defendants' handcuffed, detained and arrested Mr. Lachance without probable cause.

63. Defendants' used unreasonable force in arresting Mr. Lachance.

64. Defendants' were indifferent to Mr. Lachance's serious medical needs.

65. These actions deprived Mr. Lachance of well-established rights under the United States Constitution including freedom from arrest without probable cause, and freedom from the use of unreasonable force under the Fourth Amendment to the United States Constitution.

66. As a direct and proximate result of the foregoing, Mr. Lachance suffered the injuries described above.

## COUNT II
### Assault and Battery
### Smith, Cloutier and White

67. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

68. Defendants' committed the tort of assault and battery against Mr. Lachance by assaulting and battering him without legal justification, cause, excuse, or privilege.

69. As a direct and proximate result thereof, the plaintiff suffered the injuries as described above.

## COUNT III

### 42 U.S.C. § 1983: Monell Claims Against Town of Charlton
### Supervisory Liability Claim against Sgt. Cloutier

70. Each of the foregoing paragraphs is incorporated by reference.

71. Sgt. Cloutier failed to intervene or to supervise White and Smith.

9

72. The policies and customs of the Town as described above were the moving force behind the violations of Plaintiff's constitutional rights by Defendants.

73. The policies and customs of the Town and their failure train and discipline was the moving force behind the violations of Plaintiff's constitutional rights by Defendants'.

### COUNT IV
### Mass. Tort Claims Act Chapter 258
### Town of Charlton

74. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

75. On January 1, 2016, Mr. Lachance's counsel served the Town with a letter of Notice and Presentment under the Massachusetts Tort Claims Act.

76. The letter appraised the City of Mr. Lachance's allegations and the injuries he sustained as a result of the conduct of its employees.

77. Mr. Lachance satisfied all conditions precedent to file this negligence action under Chapter 258 § 4.

78. But on May 12, 2016 and after receiving access to Mr. Lachance's medical records the Town's insurance company formally denied the claim.

79. As a direct and proximate result of the negligent conduct of the City's employees, plaintiff was harmed as stated herein.

### COUNT V
### 42 U.S.C. § 12131: American with Disabilities Act Town of Charlton

80. Each of the foregoing paragraphs is incorporated by reference.

81. At all times relevant to this complaint, Defendant officers acted within the scope of their employment with the Town.

82. The American with Disabilities Act of 1990 (hereinafter the "ADA"), 42 U.S.C. § 12101 *et seq.* is a federal statute that imposes enforceable standards addressing discrimination against individuals with disabilities in various institutions, services and accommodations.

83. Title II of the ADA, at § 12131, *et seq.*, provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See*, 42 U.S.C. § 12131.

84. The ADA defines a "qualified individual with a disability" as a disabled individual "who, with or without reasonable modification to rules, policies or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *See* 42 U.S.C. § 12131 (2).

85. A "public entity" includes a state or local government, as well as any department, agency, special purpose district, or other instrumentality of a state or local government. *See* 42 U.S.C. § 12131(1).

86. Lachance's epilepsy was and is a disability that substantially limits his major life activities.

87. At all times relevant to this action, Lachance was a qualified individual with a disability, pursuant to the ADA.

88. At all times relevant to this action, the Town was a public entity, pursuant and subject to the ADA.

89. The Town failed to properly train its police officers in a key area of law enforcement so that officers would recognize and aid citizens suffering epilepsy, seizures and other disabilities.

90. The Defendant Officers knew, or should have known, Lachance was a disabled person.

91. The Defendant Officers arrested Lachance because of his legal conduct that was related to his disability.

92. By reason of his disability, as described herein, Lachance was excluded from participation in, or denied the benefits of the services, programs or activities of the Town, or was subjected to discrimination by the Town.

93. As a direct and proximate result of the foregoing, Mr. Lachance suffered the injuries described above, including but not limited to enduring pain and suffering, lasting back pain and will continue to suffer from these injuries in the future.

WHEREFORE, Plaintiff hereby respectfully requests the following relief:

1. All compensatory damages;
2. Injunctive relief;
3. All punitive damages against defendants,
4. Award costs of this action, including reasonable attorney's fees and
5. Award such other relief as the Court deems just and proper;

**PLAINTIFF REQUEST TRIAL BY JURY AS TO ALL CLAIMS**

Respectfully submitted,
Plaintiff Michael E. Lachance
By his attorneys,

_____
Hector E. Pineiro, BBO # 555315
Robert A. Scott, BBO # 648740
Law Office of Hector E. Pineiro, P.C.
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com

Dated: December 30, 2016

13

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS                                          CIVIL ACTION NO.
                                                       16-1988A

MICHAEL E. LACHANCE                )
                                   )
                                   )
                                   )      FILED
         Plaintiff                 )
                                   )      DEC 30 2016
v.                                 )
TOWN of CHARLTON, a Municipal corporation  )  ATTEST: [signature] CLERK
And officers TIMOTHY A. SMITH, SGT. KEITH R. )
CLOUTIER, JASON F. WHITE           )
                                   )
         Defendants                )
                                   )

## MOTION FOR APPOINTMENT OF SPECIAL SERVICE PROCESS SERVER
[Mass. R. Civ. P. 4 (c)]

Now come the plaintiffs and as per Massachusetts Rule of Civil Procedure 4 (c) they requests this Honorable Court to appoint as process server in this action a constable of the Office of George & Associates, 390 Main Street, Suite 1039, Worcester, Massachusetts, in order to assure a substantial savings in time. The undersigned affirms under the pains and penalties of perjury that to the best of his knowledge and belief the person to be appointed is a Constable experienced in the service of process and not a party to, or otherwise interested in, this action.

Allowed
Kenneth Welch J
[initials]
1/3/17

Respectfully submitted,
Plaintiff Michael E. Lachance
By his attorneys

[signature]

Hector E. Pineiro, BBO # 555315
Robert A. Scott, BBO # 648740
Law Office of Hector E. Pineiro
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com

Dated: December 30, 2016

14

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS                                                      CIVIL ACTION NO.

|  |  |
|---|---|
| MICHAEL E. LACHANCE </br></br> Plaintiff </br></br> v. </br> TOWN of CHARLTON, a Municipal corporation </br> And officers TIMOTHY A. SMITH, SGT. KEITH R. </br> CLOUTIER, JASON F. WHITE </br></br> Defendants | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## UNIFORM COUNSEL CERTIFICATE FOR CIVIL ACTIONS

I am an attorney of record for the Plaintiff Michael E. Lachance. In accordance with Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution, (SJC Rule 1:18) which states in part, ". . . Attorneys shall: provide their clients with this information about court-connected dispute resolution services, discuss with their clients the advantages and disadvantages of the various methods of dispute resolution, and certify their compliance with this requirement[,]" I hereby certify that I have complied with this requirement.

Respectfully submitted,
Plaintiff Michael E. Lachance
By his attorneys,

Hector E. Pineiro, BBO # 555315
Robert A. Scott, BBO # 648740
Law Office of Hector E. Pineiro
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com

Dated: December 30, 2016

15

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF WORCESTER | DOCKET NO. |
|---|---|---|
| **PLAINTIFF(S)** Michael E. Lachance | **DEFENDANT(S)** Town of Charlton, Timothy A. Smith, Sgt. Keith R. Cloutier, Jason White | |

| Plaintiff Atty | Hector E. Pineiro, Robert A. Scott, Esquire | Type Defendant's Attorney Name | |
|---|---|---|---|
| Address | 807 Main Street | Defendant Atty | Not available |
| | | Address | |
| City | Worcester  State MA  Zip Code 01610 | City | State   Zip Code |
| Tel. | 770-0600    BBO# 555,315 | | |

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

CODE NO.   TYPE OF ACTION (specify)   TRACK   IS THIS A JURY CASE?

E03 Claims against Comm or Municipality - Average Track
E99 MISC OTHER Federal Civil Rights, American with Disabilities Act

[X] Yes  [ ] No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses                           $
  2. Total doctor expenses                             $
  3. Total chiropractic expenses                       $
  4. Total physical therapy expenses                   $
  5. Total other expenses (describe)                   $
                                              Subtotal $ 54,000.00
B. Documented lost wages and compensation to date     $
C. Documented property damages to date                $
D. Reasonably anticipated future medical expenses     $
E. Reasonably anticipated lost wages and compensation to date  $
F. Other documented items of damages (describe)       $

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
Plaintiff had a seizure on 1/4/2014 and police and paramedics came to assist. His medical condition and disability was misperceived by police as criminal behavior. Because of the excessive force employed by police Plaintiff suffered greatening injury he would not have. Including but not limited to an acute spinal fracture at T4-T5 and pain and suffering.

Total $ 100,900 IN EXCESS OF

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL  $..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

AI hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Signature of Attorney of Record _Hector Pineiro_    Date: 12-30-16

A.O.S.C. 3-2007

## CIVIL ACTION COVER SHEET INSTRUCTIONS
### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**\* CONTRACTS**

| | |
|---|---|
| A01 Services, Labor and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A99 Other (Specify) | (F) |
| E03 Claims against Commonwealth or Municipality | (A) |

**\*TORT**

| | |
|---|---|
| B03 Motor Vehicle Negligence personal injury/property damage | (F) |
| B04 Other Negligence- personal injury/property damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice-Medical | (A) |
| B07 Malpractice-Other (Specify) | (A) |
| B08 Wrongful Death, G.L. c.229, s.2A | (A) |
| B15 Defamation (Libel-Slander) | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury- slip & fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| B99 Other (Specify) | (F) |
| E03 Claims against Commonwealth | (A) |

**\* REAL PROPERTY**

| | | |
|---|---|---|
| C01 | Land Taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth or Municipality | (A) |

**EQUITABLE REMEDIES**

| | | |
|---|---|---|
| D01 | Specific Performance of Contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (F) |
| D13 | Declaratory Judgment G.L. c. 231A | (A) |
| D99 | Other (Specify) | (F) |

**MISCELLANEOUS**

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency G.L. c. 30A | () |
| E03 | Claims against Commonwealth or Municipality | (/ |
| E05 | Confirmation of Arbitration Awards | () |
| E07 | G.L. c.112, s.12S (Mary Moe) | () |
| E08 | Appointment of Receiver | () |
| E09 | General Contractor bond, G.L. c. 149, ss. 29, 29a | (/ |
| E11 | Workers Compensation | (> |
| E12 | G.L.c.123A, s.12 (SDP Commitment) | (> |
| E14 | G.L. c. 123A, s. 9 (SDP Petition) | |
| E15 | Abuse Petition, G. L. c. 209A | (x |
| E16 | Auto Surcharge Appeal | (: |
| E17 | Civil Rights Act, G.L. c.12, s. 11H | (A |
| E18 | Foreign Discovery Proceeding | (X |
| E19 | Sex Offender Registry G.L. c. 178M, s. 6 | (X |
| E21 | Protection from Harassment c 258E | (X |
| E25 | Plural Registry (Asbestos cases) | |
| E95 | \*\*Forfeiture G.L. c. 94C, s. 47 | (F |
| E96 | Prisoner Cases | (F |
| E97 | Prisoner Habeas Corpus | (X |
| E99 | Other (Specify) | (X |

\*Claims against the Commonwealth or a municipality are type E03, Average Track, cases.
\*\*Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type E95, Fast track.

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [X] Yes   [ ] |

### SUPERIOR COURT RULE 29

DUTY OF THE PLAINTIFF. The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

DUTY OF THE DEFENDANT. Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
MAY RESULT IN DISMISSAL OF THIS ACTION.

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 1685CV01988 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Michael E Lachance vs. Town of Charlton | | Dennis P. McManus, Clerk of Courts |
| TO: Town of Charlton , | | COURT NAME & ADDRESS Worcester County Superior Court 225 Main Street Worcester, MA 01608 |

## TRACKING ORDER - X - Accelerated

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                             DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 03/30/2017 | |
| Response to the complaint filed (also see MRCP 12) | | 01/01/2018 | |
| All motions under MRCP 12, 19, and 20 | | | |
| All motions under MRCP 15 | | | |
| All discovery requests **and depositions** served and non-expert despositions completed | | | |
| All motions under MRCP 56 | | | |
| Final pre-trial conference held and/or firm trial date set | | | |
| Case shall be resolved and judgment shall issue by | | | |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.
This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 03/15/2017 | **Alex Rodriguez** | (508)831-2357 |

Date/Time Printed: 03-15-2017 12:59:21                                                          SCV026\ 11/2014